[Crim. No. 631. First Appellate District.—September 18, 1916.]

## THE PEOPLE, Respondent, v. FRANK AMBROSE, Appellant.

CRIMINAL LAW — RELEASE FROM CUSTODY PENDING TRIAL — FALSE AND WORTHLESS BAIL BOND—SUFFICIENCY OF INDICTMENT.—An indictment alleging that the defendant, acting in concert with his three codefendants, "did unlawfully, willfully, and fraudulently conspire, combine, confederate, and agree to obtain the release and discharge from custody" of a prisoner (who was confined in the county jail pending trial upon an indictment which charged him with the commission of a felony), "by presenting to the superior court of the state of California in and for the city and county of San Francisco a fraudulent, worthless, and void bail bond," states facts sufficient to constitute the offense denounced by the terms of subdivision 5 of section 182 of the Penal Code.

ID.—COUNSELING OF CODEFENDANT TO BECOME SURETY—EVIDENCE—UNWARRANTED CONVICTION.—In such a prosecution, where the only evidence adduced which tended in any way to connect the defendant with the alleged conspiracy was that he advised and counseled one of his codefendants to become a surety on the bond, and to swear that he was owner of property which stood of record in his name, but in fact belonged to the defendant, his conviction is unwarranted.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial. Frank H. Dunne, Judge.

The facts are stated in the opinion of the court.

John D. Harloe, for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

THE COURT.—In an indictment returned to the superior court of the city and county of San Francisco the defendant herein, jointly with three other persons, was charged with the crime of criminal conspiracy. The appeal is from the judgment of final conviction and from an order denying a new trial.

Subdivision 5 of section 182 of the Penal Code, under which the indictment evidently was drawn, denounces as a criminal

conspiracy the conduct of two or more persons who conspire "to commit any act . . . for the perversion or obstruction of justice, or due administration of the laws." The charging part of the indictment alleges that the defendant, acting in concert with the three codefendants, "did unlawfully, willfully, and fraudulently conspire, combine, confederate, and agree to obtain the release and discharge from custody" of one Joseph Monahan (who was confined in the county jail pending trial upon an indictment which charged him with the commission of a felony), "by presenting to the superior court of the state of California in and for the city and county of San Francisco a fraudulent, worthless, and void bail bond." The indictment further alleged that two of the codefendants had agreed to falsely swear, and did so swear, when qualifying as sureties upon the bail bond of Monahan, that they were each worth the sum of two thousand five hundred dollars, the amount fixed as bail, over and above their just debts and liabilities, and that they were respectively the owners of certain real estate situated in the county of Yolo and the city and county of San Francisco.

Apparently the only connection which the defendant Ambrose had with the conspiracy charged, in so far as the allegations of the indictment are concerned, is to be found in the concluding paragraph of the indictment, which alleged that he advised and counseled Shaney, one of the codefendants who became a surety on the bond, "to execute said bond and to swear that he was the owner of said property." It will be noted that the indictment does not charge that it was the intent and purpose of the defendant and his alleged co-conspirators to do anything more by the preparation and presentation of the bail bond in question than to procure the release of Monahan upon bail pending his trial upon the felony charged against him. Neither expressly nor by necessary implication does the indictment allege that the release of Monahan upon worthless bail was procured primarily for the purpose of permitting him to abscond and thereby evade the possible penalties of a trial and conviction. Nevertheless, we are of the opinion that the indictment states facts sufficient to constitute the offense charged against the defendant, and that therefore his demurrer was properly overruled by the trial court. True it is that release from custody upon bail pending trial is ordinarily the constitutional and statutory

right of every person charged with crime; but it is equally true that it is neither the constitutional nor statutory right of a person to be so released by means of a false and worthless bail bond; and it seems certain to us that the procurement of the release in that manner is a perversion of the due administration of the law, and therefore comes within the denunciation of subdivision 5 of section 182 of the Penal Code.

We are satisfied, however, upon a review of the evidence adduced upon the entire case that the judgment against this defendant cannot be sustained. The only evidence adduced upon behalf of the people tending in any way to connect the defendant with the alleged conspiracy may be stated in substance to be that the codefendant Shaughnessy qualified as a surety upon the bail bond in question under the name of Shaney; that the property which at the time of qualifying he swore he owned stood of record in the name of Shaney; that the property originally belonged to Ambrose; that the latter had placed it of record in the name of Shaney at a time when he was having trouble with his wife; that Shaughnessy, with the knowledge and consent of the defendant Ambrose, pretended to be the owner of the property, and on one or two occasions exercised acts of ownership over the property by borrowing money secured by mortgages upon it executed and acknowledged in the name of Shaney; that one Barkley, attorney for Monahan, called upon Ambrose for the purpose of having him procure Shaughnessy as a bondsman, giving as security the property in question; that the defendant Ambrose stated to Barkley that he had no objection to Shaughnessy going upon the bond, and that when Shaughnessy mentioned the subject of going upon the bond Ambrose replied, "If you desire it, go on the bond; it is all right; I think Monahan is all right." Incidentally it was shown in evidence that Shaughnessy was sometimes known as Shaney.

In the face of this evidence we do not think it can be said that the bond, as regards Shaughnessy's qualifications to serve thereon, was valueless. Even though the defendant Ambrose claimed to have been the real owner of the property, nevertheless inasmuch as the record title was in the name of Shaney, and that Shaughnessy, under the name of Shaney (by which he was sometimes known), duly executed

and acknowledged the bond, there can be no doubt that the property standing in the name of Shaney could have been resorted to in satisfaction of a breach of the bond had one occurred. This being so, it cannot be held that the evidence sustains the allegation of the indictment to the effect that Ambrose counseled and advised his codefendant Shaughnessy to execute and qualify upon a false and worthless bond. It may be conceded that the evidence shows that the codefendant Gilfeather, who qualified as surety upon the bond, perjured himself when he swore upon qualifying that he was the owner of certain property situate in the city and county of San Francisco, and that therefore, in so far as Gilfeather was concerned, the bond was false and valueless; but aside from the fact that the indictment does not charge Ambrose with having counseled and advised Gilfeather to execute the bond and qualify as a surety thereon, we have been unable to find in the record any evidence showing, or tending to show, any connection of the defendant Ambrose with his codefendant Gilfeather in the preparation and presentation of the bond. In short, in so far as the evidence shows, whatever Ambrose may have done in the transaction was independent of anything done by Gilfeather. This being so, it cannot be said that the conspiracy charged in the indictment was sustained by the evidence adduced at the trial.

This conclusion makes it unnecessary to refer to and decide the other points presented upon the appeal.

For the reasons stated the judgment and order appealed from are reversed.